HARDER, MIRELL & ABRAMS LLP
CHARLES J. HARDER
Nevada Bar No.: (*Pro Hac Vice to be Filed*)
California Bar No.: 184593
1925 Century Park East, Suite 800
Los Angeles, California 90067
Telephone:   (424) 203-1600
Facsimile:    (424) 203-1601
CHarder@HMAfirm.com

LAW OFFICES OF DAVID R. HOUSTON
DAVID R. HOUSTON
Nevada Bar No: 2131
432 Court Street
Reno, Nevada  89501
Telephone:   (775) 786-4188
Facsimile:    (775) 786-5573
DHouston@HoustonAtLaw.com

Attorneys for Plaintiff
SUSAN STRACK

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA, NORTHERN DIVISION

| | |
|---|---|
| SUSAN STRACK, an individual,<br><br>          Plaintiff,<br><br>     v.<br><br>STEVLAND MORRIS, an individual;<br>BLACK BULL MUSIC, INC., a corporation<br>of unknown origin; BLACK BULL MUSIC,<br>LLC, a California limited liability company;<br>STEVLAND MORRIS MUSIC, LLC, a<br>California limited liability company; TAURUS<br>PRODUCTIONS, LLC, a California limited<br>liability company; SAWANDI MUSIC, an<br>entity of unknown form and origin; and DOES<br>1 through 10, inclusive,<br><br>          Defendants.<br>_____ | CASE NO.<br><br>**COMPLAINT FOR:**<br><br>1.  **BREACH OF WRITTEN<br>     AGREEMENT**<br><br>2.  **INTENTIONAL INTERFERENCE<br>     WITH CONTRACTUAL<br>     RELATIONS**<br><br>3.  **CONVERSION**<br><br>4.  **DECLARATORY RELIEF<br>     (28 U.S.C. § 2201)** |

Plaintiff Susan Strack alleges as follows:

### SUMMARY OF THE ACTION

1.      Plaintiff Susan Strack (herein, "Ms. Strack" or "Plaintiff") is the widow of Johanan Vigoda ("Vigoda") who served for forty (40) consecutive years as the entertainment transactional attorney for defendant Stevland Morris, professionally known as Stevie Wonder ("Morris") and his corporate entities, and also served as manager of Morris's Jobete Music catalog.  The professional relationship between Vigoda and Morris lasted consistently from 1971 through November 17, 2011, the date Vigoda passed away.  Vigoda continued working on behalf of Morris until the day Vigoda died.

2.      Vigoda's contribution to the success of Morris's music career was substantial. Because of Vigoda's representation, the terms of Morris's deals with music companies went from oppressive (before Vigoda became involved in 1971), to Morris having among the most lucrative contract terms in the music industry, within a short time after Vigoda began to represent him and his companies, and those lucrative contract terms remained continuous through the forty years that Vigoda represented Morris.  Vigoda was widely known as one of the most effective attorneys in the music industry.  Nothing better exemplifies the effectiveness of Vigoda's representation than the fact that Morris kept Vigoda retained on his behalf consecutively for four decades.

3.      The many written agreements between Vigoda and Defendants set forth Vigoda's compensation terms:  Vigoda was to be paid a 6% fee of the revenues paid to Morris and his companies, associated with the agreements that Vigoda worked on, and that fee was required to be paid "forever" and would transfer to Vigoda's "heirs, assigns and successors in interest."  Vigoda entered into several such agreements with Morris and his companies, with identical or nearly identical language, over the course of the 40 year period between 1971-2011.

4.      To ensure that Morris, who has been blind since shortly after his birth, was clearly aware of the terms of each of the agreements that he entered into with Vigoda, Morris had a witness read to him the complete terms of each agreement.  Once the terms were acceptable to Morris, he confirmed his (and his companies') agreement to the terms by affixing his mark to the agreement –

usually his fingerprint – and the witness who read the terms to him also signed the agreement below Morris' mark, certifying that that witness had read to Morris all of the terms of the agreement.

5.      Vigoda died on November 17, 2011, and bequeathed to his wife, plaintiff Ms. Strack, all rights receive the 6% fee "forever."  After Vigoda's death, Morris and his companies (Defendants herein) continued to abide by the terms of the many written agreements with Vigoda, and paid Vigoda's estate (Ms. Strack) the required 6% fee.  These payments continued for approximately twenty (20) months following Vigoda's death.  However, in approximately mid-2013, Morris and his companies made the decision to breach their agreements with Vigoda (and his heir and successor:  his widow, Ms. Strack), and stopped all payments to Ms. Strack.  Morris and his companies also sent written notices to music companies throughout the industry, instructing them to stop all payments to Ms. Strack, notwithstanding the fact that she (and her successors) were and are legally entitled to the 6% fee "forever."  As of that time, Morris and his companies retained for themselves the 6% fee, and Ms. Strack received nothing.

6.      From mid-2013 through the present, Ms. Strack made every possible effort to persuade Morris and his companies to reinstate the 6% fee, and employed legal counsel to do so. However, Morris and his companies outright refused to reinstate any of the payments, and sought to negotiate a settlement of the dispute for "pennies on the dollar."  Morris's and his companies' refusal to comply with their legal obligations under their many written agreements with Vigoda (and his heir and successor:  his widow, Ms. Strack), left Ms. Strack with no reasonable alternative but to bring this action to re-instate permanently the 6% fee "forever" (including to her heirs, assigns and successors-in-interest); obtain back-payment of the 6% fee that has been wrongfully withheld from her since mid-2013; and seek plus punitive damages against Morris and his companies for their knowing and intentional acts of taking from Ms. Strack the fees and compensation to which she is rightfully and legally entitled.

**THE PARTIES**

7.      Plaintiff SUSAN STRACK is, and at all times relevant hereto was, an individual and domiciliary of the State of Nevada, County of Douglas.

8.      Plaintiff is informed and believes, and based thereon alleges, that defendant STEVLAND MORRIS is a resident and domiciliary of the State of California.  Morris is a well-known recording artist, musician, singer, songwriter and record producer.

9.      Plaintiff is informed and believes, and based thereon alleges, that defendant BLACK BULL MUSIC, INC. ("BBMI") is a corporation of unknown origin.

10.      Plaintiff is informed and believes, and based thereon alleges, that defendant BLACK BULL MUSIC, LLC ("BBM LLC") is a limited liability company organized and existing under the laws of the State of California.

11.      Plaintiff is informed and believes, and based thereon alleges, that defendant TAURUS PRODUCTIONS, LLC ("Taurus") is a limited liability company organized and existing under the laws of the State of California.

12.      Plaintiff is informed and believes, and based thereon alleges, that defendant STEVLAND MORRIS MUSIC, LLC ("SMM") is a limited liability company organized and existing under the laws of the State of California.

13.      Plaintiff is informed and believes, and based thereon alleges, that defendant SAWANDI MUSIC ("Sawandi") is an entity of unknown form and origin.

14.      Plaintiff is informed and believes and based thereon alleges that the fictitiously-named defendants sued herein as Does 1 through 10, and each of them, are in some manner responsible or legally liable for the actions, events, transactions and circumstances alleged herein. The true names and capacities of such fictitiously-named defendants, whether individual, corporate, associate or otherwise, are presently unknown to Plaintiff, and Plaintiff will seek leave of Court to amend this Complaint to assert the true names and capacities of such fictitiously-named defendants when the same have been ascertained.  For convenience, each reference to a named defendant herein shall also refer to Does 1 through 10.  All defendants, including both the named defendants and those referred to herein as Does 1 through 10, are sometimes collectively referred to herein as "Defendants."

15.      Plaintiff is informed and believes and based thereon alleges that Defendants, and each of them, were and are the agents, employees, partners, joint-venturers, co-conspirators, owners,

principals, and employers of the remaining Defendants, and each of them are, and at all times herein mentioned were, acting within the course and scope of that agency, partnership, employment, conspiracy, ownership or joint venture.  Plaintiff is further informed and believes and based thereon alleges that the acts and conduct herein alleged of each such Defendant were known to, authorized by and/or ratified by the other Defendants, and each of them.

**JURISDICTION AND VENUE**

16.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the controversy is between a citizen of the State of Nevada, on the one hand, and a citizen and businesses of states *other than* the State of Nevada.  The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

17.     This Court has personal jurisdiction over each of the Defendants because the Defendants have done business with Plaintiff in the State of Nevada, and did business with Vigoda, a resident of the State of Nevada, in the years preceding his death.  The instant controversy arises out of such contacts with the State of Nevada.

18.     Venue is proper in the Northern District of Nevada under 28 U.S.C. § 1391(b) because the events giving rise to the claims set forth in this Complaint occurred in this judicial district:  Plaintiff resides in this District; Vigoda resided in this District prior to his death and at the time that he provided legal services to Defendants; and each of the Defendants has done and does business in this District.  Moreover, a substantial part of the events giving rise to the claims herein occurred in this District, with Plaintiff and Vigoda while they were residents and domiciliaries of this District.

**FIRST CAUSE OF ACTION**

**Breach of Written Agreement**

**(Against All Defendants)**

19.     Plaintiff repeats, re-alleges, adopts and incorporates by reference each and every allegation contained in Paragraphs 1 through 18, inclusive, as though fully set forth herein.

20.     Multiple valid, binding and enforceable written agreements exist between Defendants, on the one hand, and Plaintiff (as Vigoda's heir and successor-in-interest), on the other

hand.  To provide examples of some of the noteworthy terms, of some of many written agreements at issue, certain provisions are set forth below, with all emphasis added for purposes of illustration:

21.     The fully-executed written agreement dated July 1, 1971, between Vigoda, on the one hand, and Morris and BBMI (among other entities), on the other hand, provides , in pertinent part, that Morris and BBMI "hereby irrevocably assigns to you [Vigoda], or your designee, all of the undersigned's right, title and interest under the Agreement to **receive any amount equal to six percent (6%) of the Royalties which will become payable to the undersigned** [Morris and BBMI] as a result of the exploitation of all the Rights, assigned to BGV under the terms of said Agreement…."

[Mark of Morris, on behalf of himself and BBMI]

[Signatures of witness Syreeta Morris, Morris's wife]

22.     The fully-executed written agreement dated April 1, 1976, between Vigoda, on the one hand, and Morris and BBMI (among other companies), on the other hand, provides, in pertinent part:

[C]onfirming and renewing your [Vigoda's] prior retainer agreement [with Morris and BBMI] the undersigned [Morris and BBMI] hereby irrevocably assigns to you or your designee, all of the undersigned's right, title, and interest under the Agreement to **receive an amount equal to six percent (6%) of the Royalties which will become payable to the undersigned** pursuant to the Agreement, whether said Royalties accrue during or long after the term of the Agreement….The undersigned agrees that this agreement shall inure to the benefit of your [Vigoda's] **heirs, assigns and successors in interest**.

[Mark of Morris, on behalf of himself and BBMI]

[Signatures of witness]

23.     The fully-executed written agreement dated April 1, 1982, between Vigoda and Morris (among others entities), provides, in pertinent part:

I [Morris] do hereby:

1. Confirm and renew our 1971 pre-existing retainer agreement re ASCAP and other matters.

2. Irrevocably assign to you [Vigoda], or your designee, all of my right, title and interest under the aforementioned Agreement to receive an amount equal to **6% of the Royalties** which will become payable to me as a result of the exploitation of Masters and Subject compositions….

4.    I agree that this agreement shall be **binding upon my [Morris's] heirs, assigns and successors in interest** and **shall inure to the benefit of your [Vigoda's] heirs, assigns and successors in interest**.  I acknowledge that this has been read to me by the witness to my signature.

[Fingerprints of Morris]

[Signature of witness Melba Williams, Morris's controller.]

24.     The fully-executed written agreement dated December 31, 1986, between Vigoda and Morris provides, in pertinent part:

Reference is hereby made to the Agreements dated as of December 31, 1986 and all Exhibits constituting the Agreements between [Motown and Jobete, BBMI, Morris, Taurus, Berry Gordi, Bach-Lieberman and MCA, collectively]… "the Agreements."

I do hereby:

1. Confirm and renew our 1971 pre-existing retainer agreement re ASCAP (Black Bull), BMI (Sawandi) and other matters as to all post 1961 recordings and compositions now existing or hereafter created under the Agreements.

2.  Irrevocably assign to you [Vigoda], or your designees and heirs forever all of my right, title and interest under the aforementioned Agreement to receive an amount equal to **6% of the Royalties** which will become payable to me as a result of the exploitation of the post 1961 Masters and Subject Compositions (as defined in said Agreements) and those composed during the future term thereof,

or otherwise earned pursuant to said Agreements whether said Royalties accrue during or at any time after the term of said Agreement i.e. for all worldwide renewal and extension terms of copyright forever…

4. I agree that this agreement shall be **binding upon my [Morris's] heirs, assigns, and successors in interest** and **shall inure to the benefit of your [Vigoda's] heirs, assigns and successors in interest.** I acknowledge that that [sic] it has been read to me by the witness to my signature.

[Fingerprints of Morris, on behalf of himself and Taurus, BBMI and Sawandi]

[Signature of witness.]

25.    The fully-executed written agreement dated June 1, 1988, between Vigoda and Morris provides:

Reference is hereby made to the Agreements dated as of June, 1988 and all Exhibits constituting the Agreements between [Morris, BBMI, Taurus, Motown, and other companies, collectively]… "the Agreements."

I do hereby:

1. Confirm and renew our 1971 pre-existing retainer agreement re ASCAP ([BBMI]), BMI (Sawandi) and other matters as to all post 1961 recordings and compositions now existing or hereafter created under the Agreements.

2. **Irrevocably assign to you, or your designees and heirs forever all of my right, title and interest under the aforementioned Agreement to receive an amount equal to 6% of the Royalties** which will become payable to me as a result of the exploitation of the post 1961 Masters and Compositions (as defined in said Agreements) and those composed during the future term thereof, or otherwise earned pursuant to said Agreements **whether said Royalties accrue during or at any time after the term of said Agreement i.e. for all worldwide original, renewal and extension terms of copyright forever**….

4. I agree that this agreement shall be **binding upon my heirs, assigns, and successors in interest** and **shall inure to the benefit of your heirs, assigns and**

1    **successors in interest**.  I acknowledge that that [sic] it has been read to me by the

2    witness to my signature.

3    [Fingerprints of Morris, on behalf of himself and BBMI]

4    [Signature of witness Rod McGrew.]

5    26.    Two letters, each dated June 15, 1988, from Morris to ASCAP and BMI, respectively,

6    state:

7    **[S]ix percent (6%)** of the monies hereafter becoming payable to the undersigned

8    [Morris] **forever**, worldwide for all original and renewal terms of copyright are

9    **payable to Johanan Vigoda and to his heirs, successors and assigns.**

10   [Fingerprints of Morris] Stevland Morris professionally known as Stevie Wonder

11   for himself individually and for Black Bull Music and Stevland Morris Music.

12   Witnessed by [signature of witness Rod McGrew] who read same to Stevland

13   Morris.

14   27.    The fully-executed written agreement dated December 11, 1992, between Vigoda, on

15   the one hand, and Morris, Taurus, BBMI and SMM provides, in pertinent part:

16   You [Morris, Taurus, BBMI and SMM] hereby irrevocably instruct and direct Motown and

17   its successors, assigns to pay worldwide and **forever** to Johanan Vigoda, and/or to such

18   **assignees or designees** as he may direct, **six percent (6%)** of all **advances, record royalties**

19   **and other monies** otherwise payable to you by Motown in connection with the exploitation

20   of all post 1961 masters featuring your performances or productions throughout the world….

21   The undersigned acknowledges that he has had read to him the contents of the foregoing

22   agreement and that he fully understands its legal [consequences] and agrees to be bound

23   thereby.

24   [Fingerprints of Morris] Stevland Morris…for himself Taurus Productions, Black

25   Bull Music and Stevland Morris Music

26   [Signature of witness]

27   28.    The aforementioned 1971, 1976, 1982, 1986, 1988, and 1992 written agreements

28   (among other written agreements between Vigoda and the Defendants with language confirming the

-9-

obligation of Defendants to pay to Vigoda and his heirs, assigns and/or successors the aforementioned 6% fee "forever"), are collectively referred to herein as the "Agreements."

29.     Vigoda and Plaintiff performed all of their respective obligations pursuant to the Agreements.

30.     Under the terms of the Agreements, Defendants agreed that Vigoda and his "heirs, assigns and successors in interest" were to receive "forever" six percent (6%) of the revenues and payments to Defendants pursuant to and in connection with Defendants' corresponding music agreements, which remain in effect.  Defendants made this agreement on behalf of themselves, as well as their respective heirs, assigns and successors in interest.

31.     Plaintiff is Vigoda's heir, assignee and/or successor-in-interest, and therefore Plaintiff (and *her* heirs, assigns and successors) is and are the rightful owner(s) of the aforementioned 6% fee "forever."

32.     Defendants committed a material breach of the aforementioned agreements by stopping and causing a stoppage of all payments to Plaintiff in or about mid-2013, after Plaintiff had been paid under the agreements throughout the approximately twenty (20) months following Vigoda's death, and also after having paid Vigoda his 6% fee throughout the approximately forty (40) years of his service to Morris and his companies, prior to his death.

33.     As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in an amount to be determined at the time of trial, which amount is reasonably estimated to be not less than Seven Million Dollars ($7,000,000), plus interest.

## SECOND CAUSE OF ACTION

### Conversion

### (Against All Defendants)

34.     Plaintiff repeats, re-alleges, adopts and incorporates by reference each and every allegation contained in Paragraphs 1 through 33 inclusive, as though fully set forth herein.

35.     Vigoda and his "heirs, assigns and successors in interest" were the rightful owners of 6% of Defendants' (and their successors') revenues under Defendants' corresponding music agreements "forever," including the Agreements identified and quoted above.

36.     Plaintiff is Vigoda's heir, assignee and/or successor-in-interest, and therefore she (and her heirs, assigns and successors) is and are the rightful owner(s) of the aforementioned 6% fee.

37.     As set forth hereinabove, commencing in or about mid-2013, Defendants wrongfully, intentionally and substantially interfered with Plaintiff's 6% fee by stopping all payments to Plaintiff and by instructing numerous music companies that had been paying the 6% fee to Plaintiff to immediately and permanently stop all such payments, and to instead pay *Defendants* such monies (which rightfully belonged to Plaintiff and her heirs, assigns and successors).  In doing so, Defendants have converted the 6% fee for their own use and gain, and in a manner intended to harm Plaintiff.

38.     Plaintiff did not consent to Defendants' actions, which had the effect of wrongfully and unlawfully converting to Defendants, Plaintiff's rightful 6% fee.

39.     As a direct and proximate result of Defendants' wrongful conversion of the 6% fee, Plaintiff has been damaged in an amount to be determined at the time of trial, which amount is reasonably estimated to be not less than Seven Million Dollars ($7,000,000), plus interest.

40.     Plaintiff is informed and believes and based thereon alleges that Defendants, in doing the things herein alleged, acted willfully, maliciously, and oppressively, and with full knowledge of the adverse effects of their actions to Plaintiff, and with willful and deliberate disregard for the consequences to Plaintiff.  By reason thereof, Plaintiff is entitled to recover punitive and exemplary damages from Defendants in an amount to be determined at the time of trial.

### THIRD CASE OF ACTION

**Intentional Interference With Contractual Relations and/or Economic Advantage**

**(Against All Defendants)**

41.     Plaintiff repeats, re-alleges, adopts and incorporates by reference each and every allegation contained in Paragraphs 1 through 40 inclusive, as though fully set forth herein.

42.     Prior to mid-2013, each of the Defendants was aware of the contractual rights and economic relations between Vigoda and Plaintiff, on the one hand, and multiple music companies including without limitation EMI and its affiliated sub-publishers, including international sub-publishers; UMG and its international affiliates including Universal Music Publishing France and

Universal Music Publishing Hong Kong; BMI; ASCAP; CMRRA (Canada); Harry Fox Agency; Hal Leonard Corp.; Gallo Music (South Africa); and Taiyo Music (Japan), among many others (collectively, the "Music Companies"), on the other hand.

43.     Prior to mid-2013, pursuant to the terms of the Agreements and the prior payment instructions by Defendants to the Music Companies, the Music Companies (among others) had been paying to Vigoda and Plaintiff their rightful contractual 6% fee.

44.     In or about mid-2013, Defendants, through their representatives, demanded to the Music Companies that they immediately and permanently stop all payments to Ms. Strack.

45.     Defendants' actions had the direct and proximate effect of causing the Music Companies to stop all payments to Ms. Strack.

46.     In undertaking such actions, each of the Defendants knowingly and intentionally interfered with Plaintiff's contractual rights and economic relations with the Music Companies.

47.     As a direct and proximate result of the Defendants' actions, Plaintiff has been damaged in an amount to be determined at the time of trial, which amount is not less than Seven Million Dollars ($7,000,000), plus interest.

48.     In doing the things herein alleged, Defendants acted willfully, maliciously, oppressively and despicably, and with full knowledge of the adverse effect of their actions on Plaintiff and with willful and deliberate disregard for the consequences to the Plaintiff.  By reason thereof, Plaintiff is entitled to recover punitive and exemplary damages from Defendants in an amount to be determined at the time of trial.

### FOURTH CAUSE OF ACTION

### Declaratory Relief

### (Against All Defendants)

49.     Plaintiff repeats, re-alleges, adopts and incorporates by reference each and every allegation contained in Paragraphs 1 through 48 inclusive, as though fully set forth herein.

50.     An actual, justiciable controversy exists between Plaintiffs and Defendants.  Pursuant to the Agreements, Plaintiff has a right to the aforementioned 6% fee forever.  Defendant denies Plaintiff's claim to the aforementioned 6% fee forever. Plaintiff therefore seeks a declaratory

1  judgment that Defendants and their heirs, assigns and successors-in-interest are obligated to pay

2  Plaintiff and her heirs, assigns and successors-in-interest a fee of 6% forever on all sums received

3  and to be received by Defendants and their heirs, assigns and successors-in-interest in connection

4  with the agreements in which Vigoda represented Morris and any other Defendants, including the

5  Agreements identified above, and including the back-payment of all paid sums from the time that

6  payments to Plaintiff stopped in or about mid-2013 until the date of Judgment, with interest.

7

8       WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly

9  and severally, as follows:

10  **AS TO THE FIRST CAUSE OF ACTION:**

11       1.      For compensatory damages in an amount to be determined at the time of trial, which

12  amount is not less than Seven Million Dollars ($7,000,000), plus interest at the maximum legal rate.

13  **AS TO THE SECOND CAUSE OF ACTION:**

14       2.      For compensatory damages in an amount to be determined at the time of trial, which

15  amount is not less than Seven Million Dollars ($7,000,000), plus interest at the maximum legal rate;

16       3.      For punitive and exemplary damages in an amount to be determined at trial.

17  **AS TO THE THIRD CAUSE OF ACTION:**

18       4.      For compensatory damages in an amount to be determined at the time of trial, which

19  amount is not less than Seven Million Dollars ($7,000,000), plus interest at the maximum legal rate;

20       5.      For punitive and exemplary damages in an amount to be determined at trial.

21  **AS TO THE FOURTH CAUSE OF ACTION:**

22       6.      A judicial declaration that Defendants and their heirs, assigns and successors-in-

23  interest are obligated to pay Plaintiff and her heirs, assigns and successors-in-interest a fee of 6%

24  forever on all sums received and to be received by Defendants and their heirs, assigns and

25  successors-in-interest in connection with the agreements in which Vigoda represented Morris and

26  any other Defendants, including the Agreements identified above, and including the back-payment

27  of all paid sums from the time that payments to Plaintiff stopped in or about mid-2013 until the date

28  of Judgment, with interest.

-13-

**AS TO ALL CAUSES OF ACTION:**

7.      For all costs of suit incurred herein;

8.      For interest at the maximum legal rate; and

9.      For such other and further relief as the Court may deem to be just and proper.


Dated: February 26, 2015                    HARDER MIRELL & ABRAMS LLP


By:   _/s/   Charles J. Harder_____
                                                CHARLES J. HARDER
                                                Lead Counsel for Plaintiff
                                                SUSAN STRACK


Dated: February 26, 2015                    LAW OFFICES OF DAVID R. HOUSTON


By:  _/s/   David R. Houston_____
                                                DAVID R. HOUSTON
                                                Local Counsel for Plaintiff
                                                SUSAN STRACK