1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                        DISTRICT OF NEVADA

8                                * * *

9    SUSAN STRACK, an individual,            )        3:15-cv-00123-LRH-VPC
                                             )
10                        Plaintiff,         )
                                             )        ORDER
11   vs.                                     )
                                             )
12   STEVLAND MORRIS, an individual,         )
     BLACK BULL MUSIC, INC., a corporation of )
13   unknown origin; BLACK BULL MUSIC,       )
     LLC, a California limited liability company; )
14   STEVLAND MORRIS MUSIC, LLC, a          )
     California limited liability company; TAURUS )
15   PRODUCTIONS, LLC, a California limited   )
     liability company; SAWANDI MUSIC, an    )
16   entity of unknown form and origin, and DOES )
     1 through 10, inclusive,                )
17                                           )
                          Defendants.        )
18   _____ )

19         This case involves contract and tort claims related to an agreement to pay attorney Johanan

20   Vigoda ("Vigoda") a fixed percentage of proceeds arising from contracts that Vigoda arranged for

21   Defendant Stevland Morris ("Morris"), popularly known as Stevie Wonder.  Before the Court is

22   Defendants Morris, Black Bull Music, Inc., Black Bull Music, LLC, Stevland Morris Music, LLC,

23   Taurus Productions, LLC, and Sawandi Music's (collectively, "Defendants") Motion to Dismiss or

24   Transfer.  Doc. #12; Doc. #13.[1]  Plaintiff Susan Strack ("Strack"), Vigoda's wife and heir, filed an

25   Opposition (Doc. #18), to which Defendants replied (Doc. #21).  Also before the Court are Strack's

26
     _____
          [1] Refers to the Court's docket number.  Doc. #13 was timely filed as a Motion to Amend Defendants'
     Motion to Dismiss.  The Court grants Defendants' Motion to Amend.

1   Evidentiary Objections and Motion to Strike.  Doc. #23.  Defendants filed an Opposition (Doc.

2   #33), to which Strack did not reply.  Finally, Defendants filed a Motion to Stay Discovery Pending

3   Resolution of Motion to Dismiss.  Doc. #25.  Strack filed an Opposition (Doc. #36), to which

4   Defendants replied (Doc. #38).

5   **I.      Facts and Procedural History**

6          During the course of the forty-year professional relationship between Vigoda and Morris,

7   Vigoda entered into a number of contracts with Defendants which provided that six percent of all

8   proceeds connected with such contracts were to be paid "forever" to Vigoda "and/or to such

9   assignees or designees as he may direct."  Doc. #18, Ex. 2 at 24.  After Vigoda died on November

10  17, 2011, Defendants continued to pay the six percent fee to Strack for approximately twenty

11  months until Defendants stopped making these payments and instructed third party music

12  companies to discontinue the payments as well.

13         When Morris and Vigoda began working together, Vigoda lived and worked in New York.

14  Vigoda moved to Nevada in 1991; the contracts formed after 1991 refer to Vigoda as Morris'

15  "Nevada advisor" and list a Nevada post office box as Vigoda's mailing address.  Since 1991,

16  Vigoda conducted business and participated in phone calls with Defendants from his Nevada home,

17  and accepted payment at his local Wells Fargo Bank branch in Stateline, Nevada.  All contracts

18  with Defendants were drafted and executed in California or New York—never in Nevada.

19  Although Morris and Vigoda never met in Nevada, Morris performed numerous concerts in Nevada

20  during the time period of the relevant contracts.

21         On or about June 8, 2013, approximately twenty months after Vigoda's death, Defendants

22  sent letters to the music companies that had been paying Vigoda's fees to Strack after his death

23  requesting that they discontinue these fees and divert them directly to Morris.  *Id.*, Ex. 8.

24  Defendants also sent a letter to Strack informing her that Defendants would no longer pay the fees

25  to Vigoda's estate.  *Id.*, Ex. 9.  Strack filed suit against Defendants in the United States District

26  Court for the District of Nevada on February 26, 2015, alleging four causes of action: (1) breach of

2

1   written agreement; (2) intentional interference with contractual relations; (3) conversion; and (4)

2   declaratory relief.  Doc. #1.  On April 17, 2015, Defendants filed the present Motion to Dismiss for

3   lack of subject matter jurisdiction, improper venue, and failure to state a claim, or in the alternative,

4   Motion to Transfer Venue.  Doc. #12; Doc. #13.  Strack filed her Motion to Strike on May 18, 2015

5   (Doc. #23), and Defendants filed their Motion to Stay on May 28, 2015 (Doc. #25).

6   **II.    Legal Standard**

7       **A.  Personal Jurisdiction**

8           Defendants first challenge the Complaint on the basis of lack of personal jurisdiction under

9   Federal Rule of Civil Procedure 12(b)(2).  To survive a motion to dismiss based on lack of personal

10  jurisdiction, plaintiff must show that the defendant has "certain minimum contacts with [the forum

11  state] such that the maintenance of the suit does not offend traditional notions of fair play and

12  substantial justice."  *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. and*

13  *Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  "At the motion to

14  dismiss stage, a plaintiff is generally required only to make out a prima facie showing of personal

15  jurisdiction to overcome a 12(b)(2) motion."  *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir.

16  2007).  Although the plaintiff cannot rest on the bare allegations of her complaint, uncontroverted

17  allegations in the complaint must be taken as true.  *Schwarzenegger v. Fred Martin Motor Co.*, 374

18  F.3d 797, 800 (9th Cir. 2004).

19          "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction

20  over persons."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014).  A court may assert personal

21  jurisdiction over a nonresident so long as it is "permitted by a state's long-arm statute and if the

22  exercise of that jurisdiction does not violate federal due process."  *In re W. States Wholesale Nat.*

23  *Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013).  Nevada's long-arm statute provides for

24  personal jurisdiction on any basis that is consistent with the Federal Constitution.  Nev. Rev. Stat. §

25  14.065.  Specifically, personal jurisdiction is proper when (1) the defendant has purposefully

26  availed itself "of the privilege of acting in the forum state," (2) the claim arises "from consequences

1  in the forum state of the defendant's activities," and (3) those activities had "a substantial enough

2  connection within the forum state to make the exercise of jurisdiction over the defendant

3  reasonable." *Consipio Holding, BV v. Carlberg*, 282 P.3d 751, 755 (Nev. 2012) (quoting *Jarstad v.*

4  *Nat'l Farmers Union*, 552 P.2d 49, 53 (Nev. 1976)).

5  **B. Venue**

6  Second, Defendants challenge the complaint on the grounds that Nevada is an improper

7  venue under Federal Rule of Civil Procedure 12(b)(3).  A civil action may be brought in (1) a

8  judicial district where the defendant resides, (2) a judicial district where "a substantial part of the

9  events or omissions giving rise to the claim occurred," or (3) a judicial district in which any

10  defendant is subject to the court's personal jurisdiction."  28 U.S.C. § 1391(b).  "[V]enue for a

11  claim based on breach of contract [is] the place of intended performance." *Decker Coal Co. v.*

12  *Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986).  In tort actions, "the locus of the injury

13  [is] a relevant factor." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001).  In the

14  alternative to dismissing a claim for improper venue, courts can transfer to another district in which

15  the case could have originally been brought if the balancing of the interests weighs in favor of

16  transfer.  28 U.S.C. § 1404(a).

17  **C. Motion to Dismiss**

18  Third, Defendants argue that Strack's second and third claims should be dismissed under

19  Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be

20  granted.  To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the

21  Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *Mendiondo v. Centinela Hosp.*

22  *Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008).  That is, a complaint must contain "a short and

23  plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

24  The 8(a)(2) pleading standard does not require detailed factual allegations, but a pleading that

25  offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will

26  not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

4

1  U.S. 544, 555 (2007)).  To satisfy the plausibility standard, 8(a)(2) requires a complaint to "contain

2  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*

3  (quoting *Twombly*, 550 U.S. at 570).

4          In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as

5  true.  *Id.*  The "factual allegations that are taken as true must plausibly suggest an entitlement to

6  relief, such that it is not unfair to require the opposing party to be subjected to the expense of

7  discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

8  Moreover, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the

9  elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*,

10  572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 681) (brackets in original) (internal

11  quotation marks omitted).  The court discounts these allegations because "they do nothing more

12  than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation."

13  *Id.* (citing *Iqbal*, 556 U.S. at 681).  "In sum, for a complaint to survive a motion to dismiss, the

14  non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

15  suggestive of a claim entitling the plaintiff to relief." *Id.*

16  **III.   Discussion**

17          **A.  Motion to Dismiss—Personal Jurisdiction**

18          Defendants contend that the Court lacks subject matter jurisdiction because no Defendants

19  are citizens of Nevada, nor do they have sufficient minimum contacts with Nevada to establish

20  personal jurisdiction.  Strack concedes that the Court lacks general jurisdiction over Defendants,

21  but argues that the court has specific jurisdiction because Defendants continued to associate with

22  Vigoda after he moved to Nevada, and caused damage to Strack in Nevada.

23          Specific jurisdiction is present when (1) the defendant has purposefully availed itself "of the

24  privilege of acting in the forum state," (2) the claim arises "from consequences in the forum state of

25  the defendant's activities," and (3) those activities had "a substantial enough connection within the

26  forum state to make the exercise of jurisdiction over the defendant reasonable." *Consipio Holding,*

282 P.3d at 755 (quoting *Jarstad*, 552 P.2d at 53).  "The plaintiff bears the burden of satisfying the first two prongs of the test," and if successful, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

### 1.     Purposeful Availment

It is well settled in the Ninth Circuit that "[a] contract alone does not automatically establish the requisite minimum contacts necessary for the exercise of personal jurisdiction."  *Gray & Co. v. Firstenberg Mack Co.*, 913 F.2d 758, 760 (9th Cir. 1990).  Prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing are relevant considerations.  *Burger King*, 471 U.S. at 479.  Furthermore, the economic impact of the contractual relationship on the forum state is of particular relevance.  *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) (citing *Burger King*, 471 U.S. at 475).  Physical absence from the forum state does not defeat personal jurisdiction.  *Id.*  For example, a plaintiff can establish purposeful availment if the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

Strack raises two primary arguments to support her claim that Defendants purposefully availed themselves of Nevada law.  Strack's first argument relates to the fact that Defendants contracted with Vigoda knowing that he had lived in Nevada since 1991, communicated with Vigoda by telephone at his home in Nevada, and made payments to Vigoda's Wells Fargo branch in Stateline, Nevada.  Although no contract was drafted or executed in Nevada, nor did Defendants discuss the terms of any contract in Nevada, Vigoda lived in Nevada since 1991, and was identified as Morris' "Nevada advisor" in contracts with Defendants for nearly twenty years before his death in 2011.  Thus, Defendants purposefully availed themselves of Nevada law by creating this lasting professional relationship and forming "continuing obligations" with a Nevada citizen.  *See Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (finding that the purposeful availment requirement is

1  satisfied "if the defendant has taken deliberate action within the forum state or if he has created

2  continuing obligations to forum residents").

3          Strack's second central argument is that Defendants purposefully availed themselves of

4  Nevada law because their intentional acts harmed Strack, a Nevada citizen.  The Ninth Circuit

5  applies the "*Calder* effects test" established by *Calder v. Jones*, 465 U.S. 783 (1984).  This test is

6  satisfied when the defendant "(1) committed an intentional act, (2) expressly aimed at the forum

7  state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

8  *Menken*, 503 F.3d at 1058.  Here, Strack has alleged an intentional act: the halting of payments to

9  Strack under the contracts between Vigoda and Defendants.  Conduct is "expressly aimed" at a

10  forum state "when the defendant is alleged to have engaged in wrongful conduct targeted at a

11  plaintiff whom the defendant knows to be a resident of the forum state."  *Id.* (quoting *Dole Food*

12  *Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)); *WMCV Phase 3, LLC v. Shushok &*

13  *McCoy, Inc.*, 750 F. Supp. 2d 1180, 1192 (D. Nev. 2010).  Defendants' alleged harmful conduct

14  was therefore "expressly aimed" at Nevada; Defendants knew that Strack was a Nevada resident

15  because her husband Vigoda was identified as Morris' "Nevada advisor," and the contracts after

16  1991 referred to his Nevada address.  It follows that Defendants knew that the harm to Strack was

17  likely to be suffered in Nevada.  Accordingly, Strack has established the purposeful availment

18  prong of the personal jurisdiction test.

19                    **2.      Arising Out of Forum-Related Activities**

20          The Ninth Circuit applies a "but for" test to determine whether a particular claim arises out

21  of forum-related activities.  *Ballard*, 65 F.3d at 1500.  Under this test, the court must ask, but for

22  the defendant's contacts with the forum state, would the plaintiff's claims against the defendant

23  have arisen?  *Id.*  Strack has satisfied this prong of the personal jurisdiction test because but for

24  Defendants' allegedly wrongful acts toward Strack, with knowledge that she was a Nevada citizen,

25  Strack's claims would not have arisen.

26  ///

7

### 3.    Whether Exercise of Jurisdiction Is Reasonable

Because Strack has established that Defendants purposefully availed themselves of Nevada law and that Strack's claims arise from harm caused by Defendants' conduct, the burden shifts to Defendants to establish that exercise of Nevada jurisdiction is unreasonable. *Burger King*, 471 U.S. at 477. In evaluating reasonableness, the court considers the following seven factors: (1) the extent of a defendant's purposeful availment; (2) the burden on defendant of appearing in the forum; (3) conflicts between the forum state and defendant's home state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the plaintiff's interest in the forum; and (7) the existence of an alternate forum. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003).

Defendants argue that exercise of jurisdiction in Nevada would be unreasonable because all Defendants are longtime California residents with extremely limited Nevada contacts, and because Nevada has no interest in exercising jurisdiction over Defendants who do not conduct substantial business in Nevada. However, Defendants have not met their burden to establish that application of jurisdiction in Nevada would be "so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) (quoting *Burger King*, 471 U.S. at 478). Although it is clear that it would be more difficult for Defendants to litigate this case in Nevada than California, it is equally clear that it would be more difficult for Strack to litigate in California.[2]

Further, Nevada has a clear interest in protecting the contract rights of its citizens. Strack has alleged that Defendants took wrongful action toward her with knowledge that she lived in Nevada. Defendants' actions negotiating and executing the contracts did not occur in Nevada, but

---

[2] Defendants argue that it would not be burdensome for Strack to litigate this case in the Central District of California because she owns a home in Riverside County, which is adjacent to Los Angeles. Doc. #21 at 15. Strack objects to the introduction of evidence about her Riverside County home in her Motion to Strike. Doc. #23 at 6-7. The Court did not consider Strack's Riverside County home in its analysis of Defendants' Motion to Dismiss or Strike. Regarding Strack's other evidentiary objections, the Court either did not rely on the challenged declarations, or believes that the challenged evidence is properly before the Court. Accordingly, the Court shall deny Strack's Motion to Strike.

the damage caused by Defendants' alleged breach was felt entirely in Nevada.  Although California would also be an appropriate forum for this lawsuit, the question before the Court is whether Defendants have established that dismissal is appropriate because jurisdiction in Nevada is unreasonable.  Because Defendants have not met their burden to establish that litigating in Nevada would be gravely difficult or cause a severe disadvantage, the Court finds that specific jurisdiction in Nevada is not unreasonable.  Accordingly, the Court denies Defendants' Motion to Dismiss for lack of subject matter jurisdiction.

### B.  Motion to Dismiss—Improper Venue

A civil action may be brought in (1) a judicial district where the defendant resides, (2) a judicial district where "a substantial part of the events or omissions giving rise to the claim occurred," or (3) a judicial district in which any defendant is subject to the court's personal jurisdiction."  28 U.S.C. § 1391(b).  Interpreting § 1391(b)(2), courts have determined that "the locus of the injury" in a tort action is relevant to the venue in which "a substantial part of the events or omissions giving rise to the claim occurred."  *Myers*, 238 F.3d at 1076.  Here, Strack properly alleged that the locus of her injuries resulting from Defendants' alleged torts occurred in Nevada, and that venue is therefore proper under § 1391(b)(2).  The Court agrees, and notes that although Strack also could have filed her Complaint in the Central District of California, nothing in the record indicates that she was required to do so to survive dismissal.  *See Mathis v. County of Lyon*, No. 2:07-cv-0628, 2007 WL 3230142, at *1 (D. Nev. Oct. 24, 2007) (citing *Commercial Lighting Prods., Inc. v. United States Dist. Court*, 537 F.2d 1078, 1080 (9th Cir. 1976)) (finding that even where a complaint could have been filed in another district, "no rule requires that it be filed in the 'best' venue").  Accordingly, the Court denies Defendants' Motion to Dismiss for improper venue.

### C.  Motion to Dismiss—Failure to State a Claim

Defendants move for dismissal of Strack's second and third claims—conversion and intentional interference with contractual relations—for failure to state a claim upon which relief can be granted.  The Court considers these claims in turn.

### 1.    Conversion

Defendants argue that Strack's Complaint fails to state a claim for conversion because it merely recites the basis for her breach of contract claim, does not seek to recover a specific sum, and Strack cannot establish an immediate right to possession of any property.  Strack asserts that she has adequately alleged the specific funds that are the basis for her conversion claim, and that Defendants wrongfully exerted dominion over her right to receive funds as Vigoda's heir.

Under Nevada law, "conversion occurs when a person exerts wrongful dominion over another's personal property without permission." *Med. Providers Fin. Corp. II v. New Life Ctrs., LLC*, 818 F. Supp. 2d 1271, 1276 (D. Nev. 2011) (citing *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000)).  "[T]he tort typically involves wrongful taking and carrying away of something tangible." *Id.* (quoting *Reliance Ins. Co. v. U.S. Bank of Wash., N.A.*, 134 F.3d 502, 506 (9th Cir. 1998)).  "[C]onversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge." *Evans*, 5 P.3d at 1048.  "Money cannot be the basis of a cause of action for conversion unless there is a 'specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment.'" *Florey Inst. of Neuroscience and Mental Health v. Kleiner Perkins Caufield & Byers*, 31 F. Supp. 3d 1034, 1044-45 (N.D. Cal. 2014) (internal citation omitted); *DFR Apparel Co., Inc. v. Triple Seven Promotional Prods., Inc.*, No. 2:11-cv-1406, 2014 WL 4891230, at *3 (D. Nev. Sept. 30, 2014).

Strack's Complaint adequately alleges the elements of a conversion claim.  First, Strack alleges that as Vigoda's heir, she was entitled to his fee identified in the contracts. Doc. #1 ¶¶35-36.  Second, Strack alleges that "Defendants wrongfully, intentionally and substantially interfered with Plaintiff's 6% fee by stopping all payments to Plaintiff" and by instructing third party music companies to stop all such payments. *Id.* ¶37.  Third, Strack alleges a specific identifiable sum that she seeks to recover as a result of Defendants' alleged conversion: the 6% fee that was promised to Vigoda in the contracts with Defendants, estimating that the total exceeds $7,000,000. *Id.* ¶¶35-39;

*see Knight v. Aqui*, 966 F. Supp. 2d 989, 1001 (N.D. Cal. 2013) (finding that a set percentage of money to be recovered was "capable of identification" for purposes of a conversion claim).  Fourth, in alleging that she was wrongfully denied payments as Vigoda's heir, Strack adequately alleged that she has a right to immediate possession of this property.

Defendants argue further that Strack's conversion claim should be dismissed because "a mere contractual right of payment, without more, does not entitle the obligee to the immediate possession necessary to establish a cause of action for the tort of conversion." *In re Bailey*, 197 F.3d 997, 1000 (9th Cir. 1999).  However, Strack's Complaint alleges the requisite malicious conduct to support this tort claim, stating that Defendants "acted willfully, maliciously, and oppressively, and with full knowledge of the adverse effects of their actions to Plaintiff, and with willful and deliberate disregard for the consequences to Plaintiff."  Doc. #1 ¶40.  Accordingly, Strack's Complaint adequately alleges the elements of the tort of conversion, and the Court therefore denies Defendants' Motion to Dismiss this claim.

### 2.    Intentional Interference with Contractual Relations

Defendants argue that Strack's claim for intentional interference with contractual relations must fail because she has not identified any valid contract with third party music companies with which Defendants interfered.  Strack refers to Vigoda's contract with Defendants as the basis for her intentional interference with contractual relations claim.

To prevail on a claim for intentional interference with contractual relations in Nevada, "a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage."  *J.J. Indus. LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).  Additionally, "the plaintiff must establish that the defendant had a motive to induce breach of the contract with the third party."  *Id.* at 1268 (citing *Nat'l Right to Life Political Action Comm. v. Friends of Bryan*, 741 F. Supp. 807, 814 (D. Nev. 1990)).  An actor's "interference with the other's prospective contractual relation is intentional if the actor desires to

1    bring it about or if he knows that the interference is certain or substantially certain to occur as a

2    result of his action." *Las Vegas-Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of S. Nev.*, 792

3    P.2d 386, 388 (Nev. 1990) (citing Restatement (Second) Torts § 766B (1979)).

4          Defendants are correct that Strack has not identified any contract between Vigoda and the

5    third party music companies mentioned in the Complaint that could give rise to a claim for

6    intentional interference with contractual relations.  The Complaint describes the contracts between

7    Vigoda and Defendants in detail, emphasizing that they provided that Vigoda and his heirs were to

8    be paid six percent of profits arising under the contracts from Morris and third party music

9    companies.  Defendants acknowledge that they requested that the third party music companies

10   cease payment of these fees to Strack, but state that these payments were not based on separate

11   contracts.  Rather, Defendants had merely asked the third party music companies to pay Strack

12   directly—rather than pay Defendants who would subsequently pay Vigoda—in order to improve

13   efficiency.  Doc. #13 at 24.  Because Strack's Complaint does not allege the existence of a valid

14   contract between Vigoda and the third party music companies, Strack has not established the first

15   prong of an intentional interference with contractual relations claim: that Defendants interfered

16   with a valid existing contract.  *See Wagoner v. Mortg. Elec. Registration Sys., Inc.*, No. 2:11-cv-

17   1922, 2013 WL 1249628, at *6 (D. Nev. Mar. 27, 2013) (stating that to establish a claim for

18   interference with contract, plaintiff must show that "there existed a valid contract between Plaintiff

19   and a third party").  Accordingly, the Court grants Defendants' Motion to Dismiss Strack's claim

20   for intentional interference with contractual relations without prejudice.  If separate contracts

21   existed between Vigoda and the third party music companies, then Strack shall file an amended

22   complaint identifying these contracts within twenty days of this Order.

23          **D.  Motion to Transfer**

24          In the alternative to dismissing Strack's claims for lack of personal jurisdiction, improper

25   venue, or failure to state a claim, Defendants request that the Court transfer this case to the Central

26   District of California.  "For the convenience of parties and witnesses, in the interest of justice, a

district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  "The purpose of this section is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Operation: ?Heroes, Ltd. v. Procter and Gamble Prods., Inc.*, 903 F. Supp. 2d 1106, 1111 (D. Nev. 2012) (quoting *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005)).

A motion to transfer venue requires the district court to consider multiple factors, including:

(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).  Here, there is no dispute that Strack's Complaint could have been filed in the Central District of California.  Accordingly, the Court considers whether the balancing of the conveniences favors transferring the case to the Central District of California.

The plaintiff's choice of forum is given "great weight."  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).  However, plaintiff's choice of forum can be overcome where the balance of conveniences weigh strongly in favor of a different forum.  *See id.* (transferring to the district where the underlying agreement was negotiated and executed, the majority of witnesses lived, and the costs of litigation would be lower).

Here, the balance of conveniences does not favor California such that Plaintiff's choice of forum in Nevada is outweighed.  First, the Court has found that Nevada has personal jurisdiction over Defendants because they knowingly conducted business with a Nevada citizen for nearly

twenty years and took intentional actions that were likely to harm a Nevada citizen.  Second, although all contracts were negotiated and executed in California and New York, the contracts executed after 1991 all identified Vigoda as Morris' "Nevada advisor," and Vigoda fulfilled his role as an advisor to Morris almost entirely in Nevada.  Third, although the total cost of litigation would likely be higher if Defendants were forced to litigate in Nevada given that Strack is the only witness of which the Court is aware who resides in Nevada, this factor does not necessarily weigh in favor of transfer.  In *Operation: ?Heroes*, the court found that the question of costs was neutral because regardless of the venue, at least one party would need to travel across the country to litigate the case.  903 F. Supp. 2d at 1115.  Defendants argue that this factor weighs in favor of transfer because all of their party witnesses live and work in California or New York.  Importantly, New York witnesses will need to travel across the country to participate in this litigation regardless of whether it proceeds in Nevada or California.  Although transfer to the Central District of California would eliminate travel costs for the California witnesses, travel to an adjacent state is not so burdensome that the convenience to Defendants outweighs Plaintiff's choice of forum in a venue that has proper jurisdiction over Defendants.  Furthermore, due to Defendants' superior financial position, the Court does not believe that litigating this case in Nevada would be so burdensome to overcome Strack's choice of forum.  *See Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 820 (N.D. Cal. 2008) ("[W]hile 'the parties' relative financial ability is not entitled to great weight,' it is a relevant consideration.").

The concentration of non-party witnesses outside of Nevada weighs slightly in favor of transfer.  Defendants have represented that the majority of witnesses that they would call to testify reside in California or New York.  Doc. #13, Ex. A ¶14.  *See Horowitz v. Sw. Forest Indus., Inc.*, 612 F. Supp. 179, 182 (D. Nev. 1985) ("The convenience of witnesses is of considerable importance" in the determination of whether to transfer to another federal district.).  The Court also acknowledges that federal district courts can only compel the testimony of unwilling non-party witnesses within 100 miles of their home or place of business.  Fed. R. Civ. P. 45(c)(1),

(d)(3)(A)(ii).  However, any non-party witnesses who are more than 100 miles from the Nevada courthouse and are not willing to testify at trial will still be available to testify by deposition prior to trial.  Additionally, Defendants' sparse information about what non-party witnesses would be available or unavailable at a Nevada trial does not outweigh Strack's choice of forum.  *See AFG, LLC v. Attia*, No. 2:10-cv-1296, 2011 WL 1807138, at *3 (D. Nev. May 11, 2011) ("Based on the sketchy information regarding the importance of Defendant's non-party witnesses, this factor does not outweigh the presumption in favor of Plaintiff's choice of forum.").

As discussed above, the balancing of conveniences does not weigh so strongly in favor of transfer to overcome Plaintiff's choice of forum. Accordingly, the Court denies Defendants' Motion to Transfer this case to the Central District of California.

**IV.    Conclusion**

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss or Transfer (Doc. #12) is GRANTED in part and DENIED in part.  If Strack elects to file an amended complaint, she shall do so within twenty (20) days of this Order.

IT IS FURTHER ORDERED that Defendants' Motion to Amend/Correct Motion to Dismiss (Doc. #13) is GRANTED.

IT IS FURTHER ORDERED that Strack's Motion to Strike (Doc. #23) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Stay Discovery Pending Resolution of Motion to Dismiss (Doc. #25) is GRANTED.

IT IS FURTHER ORDERED that Strack's Request for a Telephonic Discovery Conference (Doc. #39) is DENIED as moot.

IT IS SO ORDERED.

DATED this 5th day of August, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE