1
2
3
4
5
6                               UNITED STATES DISTRICT COURT
7                                     DISTRICT OF NEVADA
8                                              * * *
9    SUSAN STRACK, an individual,
10           Plaintiff,                                   3:15-CV-00123-LRH-VPC
11           v.
12   STEVLAND MORRIS, an individual; BLACK          ORDER
     BULL MUSIC, INC., a corporation of
13   unknown origin; BLACK BULL MUSIC,
     LLC, a California limited liability company;
14   STEVLAND MORRIS MUSIC, LLC, a
     California limited liability company; TAURUS
15   PRODUCTIONS, LLC, a California limited
     liability company; SAWANDI MUSIC, an
16   entity of unknown form and origin, and DOES
     1 through 10, inclusive,
17
             Defendants.
18

19          Before the Court is Defendants Stevland Morris; Black Bull Music, Inc.; Black Bull

20   Music, LLC; Stevland Morris Music, LLC; Taurus Productions, LLC; and Sawandi Music's

21   (collectively, "Defendants") Motion to Dismiss and Request for Judicial Notice.  Doc. #49[1];

22   Doc. #50.  Plaintiff Susan Strack ("Strack") filed an Opposition (Doc. #53), to which Defendants

23   replied (Doc. #54).

24   **I. Factual Background**

25          This case involves contract and tort claims related to an agreement to pay attorney

26   Johanan Vigoda ("Vigoda") a fixed percentage of proceeds arising from contracts that Vigoda

27   arranged for Defendant Stevland Morris ("Morris"), popularly known as Stevie Wonder.

28
     _____
     [1] Refers to the Court's docket number

                                                 1

1    During the course of the forty-year professional relationship between Vigoda and Morris,

2    Vigoda entered into a number of contracts with Defendants which provided that six percent of all

3    proceeds connected with such contracts were to be paid "forever" to Vigoda "and/or such

4    assignees or designees as he may direct."  Doc. #18, Ex. 2 at 24.  After Vigoda died on

5    November 17, 2011, Defendants continued to pay the six percent fee to Strack for approximately

6    twenty months.  On or about June 8, 2013,  Defendants sent letters to the music companies that

7    had been paying Vigoda's fees to Strack after his death requesting that they discontinue these

8    fees and divert them directly to Morris.  *Id.*, Ex. 8.  Defendants also sent a letter to Strack

9    informing her that Defendants would no longer pay the fees to Vigoda's estate.  *Id.*, Ex. 9.

10    Strack filed suit against Defendants in the United States District Court for the District of

11    Nevada on February 26, 2015, alleging four causes of action: (1) breach of written agreement;

12    (2) intentional interference with contractual relations; (3) conversion; and (4) declaratory relief.

13    Doc. #1.  On August 5, 2015, this Court issued an order dismissing Strack's intentional

14    interference with contractual relations claim without prejudice.  On August 25, 2015, Strack filed

15    an Amended Complaint, modifying her claim for intentional interference with contractual

16    relations and/or economic advantage.  Defendants filed a motion to dismiss Strack's claim for

17    intentional interference with contractual relations and/or economic advantage on September 8,

18    2015.  Doc. #49.  Defendants also filed a Request for Judicial Notice on September 8, 2015.

19    Doc. #50.  Strack filed an Opposition on September 22, 2015.  Doc. #53.  Defendants filed their

20    reply on October 2, 2015.  Doc. #54.

21    **II. Legal Standard**

22    Defendants seek dismissal for failure to state a claim upon which relief can be granted

23    pursuant to Federal Rule of Civil Procedure 12(b)(6).  To survive a motion to dismiss for failure

24    to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice

25    pleading standard.  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir.

26    2008).  That is, a complaint must contain "a short and plain statement of the claim showing that

27    the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The 8(a)(2) pleading standard does not

28    require detailed factual allegations, but a pleading that offers "'labels and conclusions' or 'a

2

1  formulaic recitation of the elements of a cause of action'" will not suffice.  *Ashcroft v. Iqbal*, 556

2  U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

3     To satisfy the plausibility standard, 8(a)(2) requires a complaint to "contain sufficient

4  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*

5  (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility when the pleaded factual

6  content allows the Court to draw the reasonable inference, based on the Court's "judicial

7  experience and common sense," that the defendant is liable for the misconduct alleged.  *See id.* at

8  678-79.  The plausibility standard "is not akin to a probability requirement, but it asks for more

9  than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts

10  that are merely consistent with a defendant's liability, it stops short of the line between

11  possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks

12  omitted).

13     In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as

14  true.  *Id.*  The "factual allegations that are taken as true must plausibly suggest an entitlement to

15  relief, such that it is not unfair to require the opposing party to be subjected to the expense of

16  discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

17  Moreover, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the

18  elements of a . . . claim . . . are not entitled to an assumption of truth."  *Moss v. U.S. Secret Serv.*,

19  572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 681) (brackets in original) (internal

20  quotation marks omitted).  The court discounts these allegations because "they do nothing more

21  than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation."

22  *Id.* (citing *Iqbal*, 556 U.S. at 681).  "In sum, for a complaint to survive a motion to dismiss, the

23  non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

24  suggestive of a claim entitling the plaintiff to relief." *Id.*

25  **III. Discussion**

26     **A.  Intentional Interference with Prospective Economic Advantage**

27     "Interference with prospective performance under an existing contractual relationship and

28  interference with the prospective creation of a contractual relationship are distinct torts."

1  *Gonzales v. Shotgun Nevada Investments, LLC*, No. 2:13-CV-00931-RCJ, 2014 WL 936737, at

2  *4 (D. Nev. Mar. 10, 2014).  The elements of intentional interference with prospective economic

3  advantage ("IIPEA") are:

4  > 1) a prospective contractual relationship between the plaintiff and a third party; 2)

5  > the defendant's knowledge of this prospective relationship; 3) the intent to harm

6  > the plaintiff by preventing the relationship; 4) the absence of privilege or

7  > justification by the defendant; and, 5) actual harm to the plaintiff as a result of the

8  > defendant's conduct.

9  *Leavitt v. Leisure Sports Inc.*, 103 Nev. 81, 734 P.2d 1221, 1225 (Nev.1987).

10  Defendants argue that Strack cannot adequately plead an IIPEA claim because an IIPEA

11  claim must be based on a prospective contractual relationship, and Strack alleges her rights arise

12  from existing contracts.  Strack counters that because Defendants caused her contractual

13  relationships with third party music companies to end, restoring them will benefit her

14  economically in the future.

15  An IIPEA claim cannot be based on interference with an existing contract.  *See e.g. Klein*

16  *v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1163 (D. Nev. 2009) (dismissing an

17  IIPEA claim because the claim was based on interference with a current relationship, not a

18  prospective one); *Shotgun Nevada Investments*, 2014 WL 936737, at *4 (holding an IIPEA claim

19  failed on its face when it alleged "only the frustration of an existing contract").  Here, it is clear

20  that Strack's claims are based on existing, executed contracts involving Defendants, Vigoda, and

21  third party music companies.  Strack cites to these contracts herself in the complaint.  Moreover,

22  her complaint itself is based on the Defendant's interruption of the contracts, not their

23  interference in their creation.  Strack does not dispute the validity or existence of these contracts,

24  she relies on it.

25  Further, this Court rejects Strack's argument that she has a prospective economic

26  advantage because she would gain financially if the contract rights Defendants disturbed were

27  restored.  If this were true, then every intentional interference with contractual relations ("IICR")

28  claim would constitute an IIPEA claim, and there would be no distinction between the two

4

separate torts.  Nevada law has made it clear that these are two separate and distinct claims with separate and distinct requirements.  *Klein*, 595 F. Supp. 2d at 1162-63 (listing elements for both IIPEA and IICR claims); *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264, 1267 (2003) (identifying the specific elements of a claim of IICR, beginning with "a valid and existing contract"); *Leavitt*, 103 Nev. at 88, 734 P.2d at 1225 (identifying the specific elements of a claim for IIPEA, beginning with "a prospective contractual relationship between the plaintiff and a third party").  Therefore, Strack cannot state a valid legal claim for IIPEA.[2]

### B.  Intentional Interference with Contractual Relations

#### a.  Judicial Estoppel

As a preliminary matter, Strack argues that Defendants should be judicially estopped from having her IICR claim dismissed while they are asserting the same claim.  Defendants disagree.

Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position.  *Rissetto v. Plumbers & Steamfitters* Local 343, 94 F.3d 597, 600–601 (9th Cir.1996); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990).  This court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings," and to "protect against a litigant playing fast and loose with the courts."  *Russell*, 893 F.2d at 1037.

The United States Supreme Court has noted that when a court is considering judicial estoppel, one of the considerations is that a "party's later position must be "clearly inconsistent" with its earlier position."  *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 1815, 149 L.Ed.2d 968 (2001).  Here, Defendants positions are not clearly inconsistent.  In their motion to dismiss, Defendants maintain that Vigoda had no valid contracts with third party music companies.  In Defendants' counterclaim, they allege that they had valid contracts with third

---

[2] Because of this, there is no need for the court to address Defendant's argument that Strack did not have leave to plead new claims.

party music companies, and that Strack interfered with those contracts.  These are two distinct, consistent positions and nothing in one clearly contradicts the other.  Therefore, judicial estoppel is inappropriate here.

### b. The IICR Claim

Defendants argue that Strack's claim for IICR must fail because she has not identified any valid contracts with third party music companies with which Defendants interfered, one cannot interfere with one's own contract, and the Defendants are not strangers to the contracts in question.  Strack contends she has alleged valid contracts and the Defendants have no legitimate interest in interfering with her relationship with third party music companies.

To prevail on a claim for intentional interference with contractual relations in Nevada, "a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus.*, 71 P.3d at 1267.  Additionally, "the plaintiff must establish that the defendant had a motive to induce breach of the contract with the third party." *Id.* At 1268 (citing *Nat'l Right to Life Political Action Comm. V. Friends of Bryan*, 741 F. Supp. 807, 814 (D. Nev. 1990)).

Here, Strack's First Amended Complaint fails to establish the first prong of an IICR claim because she fails to identify a valid and existing contract between Vigoda and the third party music companies that could give rise to an IICR claim.  The portions of the contracts that are quoted in Strack's First Amended Complaint do not demonstrate any consideration on Vigoda's part.  Consideration is a necessary element of any valid contract.  *Hicks v. Dairyland Ins. Co.*, No. 2:08-CV-1687-RCJPAL, 2010 WL 2541175, at *5 (D. Nev. Mar. 3, 2010) aff'd, 441 F. App'x 463 (9th Cir. 2011).  In Nevada, in order to constitute consideration, "a performance or return promise must be bargained for.  A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." *In re Fullmer*, 323 B.R. 287, 296 (Bkrcty.D.Nev.2005) (quoting *Pink v. Busch*, 100 Nev. 684, 688, 691 P.2d 456 (Nev.1984)).  The selected provisions Strack provides simply state that the music companies "recognized and accepted" the assignment

1  and agreed to pay the fee Morris owed Vigoda directly to Vigoda.  Doc. #45.  Nothing indicates

2  that Vigoda had any obligations to the third party music companies themselves.  Indeed, in her

3  Opposition, Strack states that the consideration for the contracts was "Mr. Vigoda's 40 years of

4  service to Defendants," which doesn't implicate the third party music companies at all.  Doc.

5  #53.  Vigoda owed the third party music companies nothing, and their only obligations to him

6  stemmed from Defendants' actions and obligations.  Strack cannot show that a valid contract

7  existed between Vigoda and the third party record companies, and thus her claim for IICR cannot

8  stand.

9         Subsequently, it is unnecessary for this Court to take judicial notice of the fully-executed

10  written agreement dated December 11, 1992, between Johanan Vigoda; Motown Record

11  Company, L.P.; Morris Taurus; BBMI; and SMM.  Similarly, it is unnecessary to address

12  Defendant's arguments that a party cannot interfere with its own contract or that only a party that

13  has no legitimate interest in the scope or course of a contract can be sued for interference with

14  contract.

15  **IV. Conclusion**

16         IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss (Doc. #49) is

17  GRANTED.

18         IT IS FURTHER ORDERED that plaintiff's third cause of action for intentional

19  interference with contractual relations and/or economic advantage is DISMISSED from

20  plaintiff's first amended complaint (Doc. #45).

21         IT IS FURTHER ORDERED that Defendant's Request for Judicial Notice (Doc. #50) is

22  DENIED as moot.

23         IT IS SO ORDERED.

24         DATED this 20th day of November, 2015.

25

26  _____

    LARRY R. HICKS
27  UNITED STATES DISTRICT JUDGE

28